Charles S. LiMandri, SBN 11084
Paul M. Jonna, SBN 265389
Teresa L. Mendoza, SBN 185820
Jeffrey M. Trissell, SBN 292480
FREEDOM OF CONSCIENCE DEFENSE FUND
P.O. Box 9520
Rancho Santa Fe, California 92067
Tel: (858) 759-9948; Fax: (858) 759-9938
cslimandri@limandri.com

Attorneys for PLAINTIFFS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITIZENS FOR QUALITY EDUCATION SAN DIEGO, an unincorporated nonprofit association; SAN DIEGO ASIAN AMERICANS FOR EQUALITY FOUNDATION, a nonprofit public-benefit corporation; SCOTT HASSON, individually and as next friend on behalf of his minor child, C.H; CHAOYIN HE, individually and as next friend on behalf of her minor child, B.H; XUEXUN HU, individually and as next friend on behalf of his minor child, R.H; KEVIN STEEL and MELISSA STEEL, individually and as next friends on behalf of their minor child, K.S; and JOSE VELAZQUEZ, individually and as next friend on behalf of his minor child, J.V.,<br><br>Plaintiffs,<br>vs.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT; RICHARD BARRERA, in his official capacity as Board President; KEVIN BEISER, in his official capacity as Board Vice President; JOHN LEE EVANS, in his official capacity as Board member; MICHAEL MCQUARY, in his official capacity as Board member; SHARON WHITEHURST-PAYNE, in her official capacity as Board member; and CYNTHIA MARTEN, in her official capacity as Superintendent,<br><br>Defendants. | Case No. '17CV1054 BAS JMA<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, by and through their undersigned counsel, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

## INTRODUCTION

1. This is a civil rights action brought under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and the California Constitution, challenging Defendants' policies, practices, and acts, that, individually and collectively, deprived and continue to deprive Plaintiffs of their fundamental constitutional rights.

2. "In no activity of the State is it more vital to keep out divisive forces than in its schools." *Edwards v. Aguillard*, 482 U.S. 578, 584 (1987). Since July 26, 2016, Defendants have engaged with the Council on American-Islamic Relations ("CAIR"), an Islamic advocacy organization, to enact, implement, and enforce an "integrated and holistic" anti-Islamophobia initiative across the San Diego Unified School District, purportedly to combat bullying and discrimination against Muslim students and their families.

3. Under the guise of this anti-bullying program, Defendants have fallen in with the aforementioned religious organization to set up a subtle, discriminatory scheme that establishes Muslim students as the privileged religious group within the school community. Consequently, students of other faiths are left on the outside looking in, vulnerable to religiously motivated bullying, while Muslim students enjoy an exclusive right to the School District's benevolent protection.

4. The United States Supreme Court has held that government must be neutral toward religion; and it may not aid, foster, or promote one religion or religious belief over other religions or religious beliefs. *See Lemon v. Kurtzman*, 403 U.S. 602 (1971); *see also Santa Fe Independent School Dist. v. Doe*, 530 U.S. 290 (2000).

5. Plaintiffs seek a declaration that Defendants violated their constitutional and statutory rights; a preliminary and permanent injunction enjoining the

implementation and enforcement of Defendants' unconstitutional policies, practices, and acts; and a judgment awarding nominal damages against all Defendants. Plaintiffs also seek an award of their reasonable costs of litigation, including attorneys' fees and expenses under 42 U.S.C. §§ 1988, Cal. C.C.P. §1021.5, and other applicable law.

**JURISDICTION AND VENUE**

6. This action arises under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and the California Constitution. Jurisdiction is conferred on this Court under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

7. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court. Plaintiffs' claim for nominal damages is made under 42 U.S.C. § 1983 and other applicable law.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events that gave rise to Plaintiffs' claims occurred in this district.

**PLAINTIFFS**

9. Plaintiff Citizens for Quality Education San Diego ("CQE-SD") is an unincorporated nonprofit association located in San Diego County, California. CQE-SD's mission is to empower parents and the local community to revitalize and strengthen public education so that every child is afforded a quality education. CQE-SD has the capacity to sue and be sued.

10. San Diego Asian Americans for Equality ("SDAAFE") Foundation is a public-benefit nonprofit corporation located in San Diego County, California. SDAAFE's mission is to advocate for full equality for San Diego Asian Americans by promoting Asian American values and mobilizing the Asian American community on issues of concern. SDAAFE has the capacity to sue and be sued.

11. Plaintiff Scott Hasson is the parent and legal guardian of Plaintiff C.H., a minor, who at all relevant times was a first-grade student at an elementary school in the

San Diego Unified School District, San Diego County, California. Plaintiff Scott Hasson is suing on his own behalf and on behalf of C.H., as his next friend. At all relevant times, Plaintiff Scott Hasson resided within the San Diego Unified School District.

12. Plaintiff Chaoyin He is the parent and legal guardian of Plaintiff B.H., a minor, who at all relevant times was a fourth-grade student at an elementary school in the San Diego Unified School District, San Diego County, California. Plaintiff Chaoyin He is suing on her own behalf and on behalf of B.H., as his next friend. At all relevant times, Plaintiff Chaoyin He resided within the San Diego Unified School District.

13. Plaintiff Xuexun Hu is the parent and legal guardian of Plaintiff R.H., a minor, who at all relevant times was a fourth-grade student at an elementary school in the San Diego Unified School District, San Diego County, California. Plaintiff Xuexun Hu is suing on his own behalf and on behalf of R.H., as his next friend. At all relevant times, Plaintiff Xuexun Hu resided within the San Diego Unified School District.

14. Plaintiffs Kevin and Melissa Steel are the parents and legal guardians of Plaintiff K.S., a minor, who at all relevant times was a seventh-grade student at a middle school in the San Diego County Unified School District, San Diego County, California. Plaintiff Kevin Steel is suing on his own behalf and on behalf of K.S., as his next friend. Plaintiff Melissa Steel is suing on her own behalf and on behalf of K.S. as his next friend. At all relevant times, Plaintiffs Kevin and Melissa Steel resided within the San Diego Unified School District.

15. Plaintiff Jose Velazquez is the parent and legal guardian of Plaintiff J.V., a minor, who at all relevant times was a ninth-grade student at a high school in the San Diego Unified School District, San Diego County, California. Plaintiff Jose Velazquez is suing on his own behalf and on behalf of J.V., as his next friend. At all relevant times, Plaintiff Jose Velazquez resided within the San Diego Unified School District.

/ / /

/ / /

## DEFENDANTS

16. Defendant San Diego Unified School District ("School District") is a public entity established and organized under California law and subject to the restrictions of both the United States and California Constitutions. The School District may sue and be sued in its own name.

17. Defendant Richard Barrera, at all relevant times, was President of the Board of Education for the School District acting under color of state law. The Board of Education ("Board") is the School District's governing body and is responsible for creating, adopting, and implementing its policies, practices, customs, acts, and omissions, including the challenged policies, practices, and acts set forth in this Complaint. Defendant Barrera is sued in his official capacity.

18. Defendant Kevin Beiser, at all relevant times, was Board Vice President for the School District acting under color of state law. Defendant Beiser is sued in his official capacity.

19. Defendant John Lee Evans, at all relevant times, was a Board member for the School District acting under color of state law. Defendant Evans is sued in his official capacity.

20. Defendant Michael McQuary, at all relevant times, was a Board member for the School District acting under color of state law. Defendant McQuary is sued in his official capacity.

21. Defendant Sharon Whitehurst-Payne, at all relevant times, was a Board member for the School District acting under color of state law. Defendant Whitehurst-Payne is sued in her official capacity.

22. Defendant Cindy Marten, at all relevant times, was the Superintendent of the School District. Defendant Marten is responsible for creating, adopting, and implementing School District policies, practices, customs, and acts, including the challenged policies, practices, and acts set forth in this Complaint. Defendant Marten is sued in her official capacity.

## STATEMENT OF FACTS

**I. <u>The Anti-Islamophobia Initiative</u>.**

23. Pursuant to School District policies, School District officials are required to report all incidents of bullying and harassment of K-12 students based on religion.

24. According to a School District "Protected Class Report," from July 1, 2016, to December 31, 2016, there were seven reported incidents of bullying and harassment of K-12 students on the basis of religion.

25. According to the School District's current enrollment report, there are 129,258 K-12 students actively enrolled in the School District. Applying this number, the number of K-12 students who reported an incident of religious bullying and harassment is approximately 0.005% of students enrolled in the School District.

26. On July 26, 2016, the Board voted unanimously to direct the School District to develop an initiative that would enact, implement, and enforce policies, practices, and acts to address Islamophobia and discrimination against Muslim students and their families ("Anti-Islamophobia Initiative").

27. "Islamophobia" is the "[f]ear, hatred, or mistrust of Muslims or of Islam." *Islamophobia*, American Heritage Dictionary (5th ed. 2017).

28. A "Muslim" is "[a] believer in or adherent of Islam." *Muslim*, American Heritage Dictionary (5th ed. 2017).

29. On April 4, 2017, School District officials delivered a PowerPoint presentation ("Presentation") to the Board, which updated the Board on the School District's Local Control and Accountability Plan ("LCAP").

30. The LCAP is a three-year district-level plan, updated annually, that describes the School District's "key goals for students as well as the specific actions (with expenditures) the district will take to achieve the goals and the means (metrics) used to measure progress."

31. Pursuant to the LCAP and via the Presentation, the School District promulgated policies, practices, and acts to enact, implement, and enforce the Anti-

Islamophobia Initiative.

32. In the Presentation, School District officials issued the following "*Immediate Action Steps*" for enactment, implementation, and enforcement:

a. "***Distribute a letter to staff and parents addressing Islamophobia and direct support***";

b. "***Review district calendars to ensure Muslim Holidays are recognized***";

c. "Include a link of supports on the district's 'Report Bullying' page";

d. "***Provide resources and strategies to support students during the upcoming month of Ramadan***"; and

e. "Continue the collaboration with community partners and district departments".

33. In the Presentation, School District officials issued the following "*Action Steps: Before the start of the 2017-18 school year*" for enactment, implementation, and enforcement:

a. "***Review and vet materials related to Muslim culture and history at the Instructional Media Center or in video libraries***";

b. "Provide Resources and materials for teachers on the History/Social Sciences page";

c. "Add information related to this topic in the Annual Employee Notifications (AP 6381)"; and

d. "***Explore and engage in formal partnerships with the Council on American-Islamic Relations (CAIR)***".

34. In the Presentation, School District officials issued the following "*Steps over multiple years*" for enactment, implementation, and enforcement:

a. "Create a survey to measure knowledge and implementation of practice";

b. "Identify areas of prevention, intervention, and restoration"

including "Restorative Practices" and "Trauma Informed Practices";

c. "***Provide a series of professional development opportunities for staff related to awareness and advocacy for Muslim culture***"; and

d. "***Provide practical tools for educators regarding Islamic religious practices and accommodations in schools***".

35. In the Presentation, School District officials issued the following "*Student empowerment*" policies, practices, and acts for enactment, implementation, and enforcement:

a. "Create opportunities for students to come together and share out their successes and challenges in service of unity";

b. "Identify safe places and individuals for students to reach out to on campus if they have a concern"; and

c. "***Explore clubs at the secondary level to promote the American Muslim Culture and the student experiences***".

36. In the Presentation, School District officials issued the following "*Parent and Community Support*" policies, practices, and acts for enactment, implementation, and enforcement:

a. "Provide Family and Community opportunities to:

b. Connect, share experiences, attend professional development, and receive resources"; and

c. "Celebrate the accomplishments of parents, students, and community in creating safe spaces".

**II. <u>The Council on American-Islamic Relations</u>.**

37. The Council on American-Islamic Relations ("CAIR") identifies itself as America's largest Muslim civil liberties organization.

38. A stated "Core Principle" of CAIR is that it "***believes the active practice of Islam strengthens the social and religious fabric of our nation***."

39. CAIR's stated mission is, in part, to "***enhance understanding of Islam***"

and "***empower American Muslims***."

40. As part of its advocacy for Muslims and Islam, CAIR "***conducts and organizes lobbying efforts on issues related to Islam and Muslims***."

41. As part of its advocacy for Muslims and Islam, CAIR provides workshops to educators as a "***proactive approach that highlights relevant Islamic practices and offers suggestions for religious accommodation***."

42. As part of its advocacy for Muslims and Islam, CAIR "counsels, mediates, and advocates on behalf of Muslims" who have "experienced religious discrimination, defamation or hate crimes."

**III. <u>Bullying and Harassment of Muslim Students</u>.**

43. The School District's stated purpose for its Anti-Islamophobia Initiative is to protect Muslim students from bullying and discrimination.

44. As a moving force for its Anti-Islamophobia Initiative, the School District relied and continues to rely upon a report released by CAIR's California chapter ("CAIR-CA") entitled, "Growing in Faith: California Muslim Youth Experiences with Bullying, Harassment & Religious Accommodation in Schools" ("Report").

45. The Report documented CAIR-CA's statewide survey of California Muslim students, the purpose of which was to "better understand how comfortable American Muslim students felt attending their schools" and achieve its "goal to enhance its awareness of the extent to which students were being bullied and their responses."

46. According to the Report, "California's Muslim students, for the most part, reported a healthy school environment in which they were comfortable participating in discussions about their religious identity, believed that their teachers respected their religion, and felt safe at school."

47. According to the Report, only 6% of students reported not feeling safe at school. Only 7% of students reported that they were "often" or "very often" subjected to "mean comments" or "rumors about [them] because of [their] religion."

48. The School District has adopted the definition of "bullying" designated by

the United States Department of Health and Human Services, which is defined as follows: "Aggressive behavior that is intentional and that involves an imbalance of power or strength. Typically, it is repeated over time."

49. The School District's interpretation of "bullying" is dissimilar to CAIR's interpretation of "bullying."

50. In the Report's *Endnotes* section, CAIR defines "bullying" as follows: "the term 'bullying' refers exclusively to bias-related actions committed by students."

51. The definition of "bias" is a "preference or an inclination, especially one that inhibits impartial judgment." *Bias*. American Heritage Dictionary (5th ed. 2017).

52. If the School District adopts CAIR's definition of "bullying" for the Anti-Islamophobia Initiative, then non-Muslim students who have a *preference or inclination against Islam* will be accused of "bullying" and then subject to investigation and discipline by school officials.

53. CAIR-CA encourages Muslim students to report bullying incidents through its website. If a Muslim student reports a bullying incident, CAIR-CA may then report the incident to the School District either orally or through a formal written complaint, after which school officials will subject the accused "bully" to a formal investigation and disciplinary action.

54. According to CAIR-CA, if the Anti-Islamophobia Initiative is successful, "***San Diego Unified School District would be the leading school district in the nation to come up with a robust and beautiful anti-bully and anti-Islamophobic program***."

55. CAIR's expectation for the Anti-Islamophobia Initiative is not just to address purported instances of bullying and harassment within the School District. Rather, the Anti-Islamophobia Initiative is a pilot program through which CAIR is attempting to advance its mission in schools nationwide.

56. Defendants' partnership with CAIR in the anti-Islamophobia program directly aids CAIR's organizational objectives of empowering American Muslims and enhancing the understanding of Islam, both of which are intrinsically religious in nature.

## IV. **Plaintiffs' Allegations.**

57. Plaintiff Scott Hasson plans for C.H. to continue to receive an elementary school education within the School District. Plaintiff Chaoyin He plans for B.H. to continue to receive an elementary school education within the School District. Plaintiff Xuexun Hu plans for R.H. to continue to receive an elementary school education within the School District. Plaintiffs Kevin and Melissa Steel plan for K.S. to continue to receive a middle school education within the School District. Plaintiff Jose Velazquez plans for J.V. to continue to receive a high school education within the School District.

58. As parents of students within the School District, collectively and individually, Plaintiffs do not wish for their children, as they mature and become more aware of religious differences, to believe that the School District favors Muslim students and the religion of Islam over students of other faiths. Therefore, Plaintiffs perceive the Anti-Islamophobia Initiative as the School District's endorsement of Islam and a rejection of other religions.

59. Plaintiffs do not wish for their children, as they learn about world religions, to be taught a falsified or rewritten history about Muslims and Islam as the School District introduces new "resources and materials" as part of the Anti-Islamophobia Initiative. Plaintiffs believe Defendants' favorable treatment of Muslims will result in biased and inaccurate educational lessons. Accordingly, Plaintiffs believe the School District will minimize or omit negative facts about Islam that, when included, would be essential to create an accurate understanding of history.

60. Defendants' policies, practices, and acts, separately and in collaboration with CAIR, constitute government entanglement and approval of the Islamic religion. Therefore, Plaintiffs object to and are offended by Defendants' collaboration with CAIR to enact, implement, and enforce the Anti-Islamophobia Initiative.

61. Defendants' Anti-Islamophobia Initiative grants the direct benefit of special government protection to Muslim students under the pretext of preventing bullying and discrimination, while such protection is unavailable on an equal basis to

students of other faiths. Therefore, Plaintiffs object that the School District will protect and support Muslim students' free exercise of their religion while students of other religions are prohibited from accessing the School District's faith-based, anti-bullying protections.

62. Defendants have specifically targeted religion for disparate treatment and have established policies, practices, and acts that permit Muslim students to gain special access to Defendants' religion-based anti-bullying / anti-discrimination forum, while denying non-Muslim students access to the same forum.

63. Defendants do not have any pedagogical basis to collaborate with a religious organization to enact, implement, and enforce policies, practices, and acts that favor a particular religious sect. Therefore, Plaintiffs object to the use of taxpayer funds to enact, implement, and enforce the Anti-Islamophobia Initiative.

64. Defendants' exploration and engagement of formal partnerships between the School District and CAIR would award CAIR extraordinary discretion, power, and influence to convey religious messages, including proselytization, to students in an involuntary and coercive environment. Therefore, Plaintiffs object to and are offended by Defendants' decision to explore and engage in formal partnerships with CAIR, because it constitutes government entanglement with religion.

65. Plaintiffs do not wish for their children, as non-Muslims, to be accused of bias and bullying by the School District and CAIR if they express viewpoints or beliefs that may conflict with the School District's and/or CAIR's arbitrary, *de facto* interpretations of "bias" and "bullying."

66. Plaintiffs do not wish for their children, as non-Muslims, to be ostracized by other students or staff if they do not accord Muslim students the requisite respect as Defendants' favored religious sect.

67. Therefore, Plaintiffs believe the Anti-Islamophobia Initiative places coercive pressure on their children to either suppress their personal beliefs and acquiesce to the School District's favored religious sect or be accused of bullying and

discrimination.

68. Consequently, Defendants' policies, practices, and acts send a clear message to the Student Plaintiffs that they are outsiders, not full members of the school community, while sending the same message that Muslim students are insiders, full members of the school community.

69. As a direct and proximate result of Defendants' continuing violation of Plaintiffs' rights, Plaintiffs have suffered immediate and irreparable harm. Without injunctive and declaratory relief as requested herein, Plaintiffs will continue to suffer immediate and irreparable harm, including, but not limited to, the loss of the ability to exercise their constitutional rights.

**FIRST CLAIM FOR RELIEF**

**(Violation of the Establishment Clause of the First Amendment)**

70. Plaintiffs hereby incorporate by reference all above-stated paragraphs.

71. Because of the aforementioned policies, practices, and acts, engaged in under color of state law, Defendants have violated the Establishment Clause of the First Amendment to the United States Constitution as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

72. Defendants' policies, practices, and acts, engaged in under state law violate the Establishment Clause because they lack a valid secular purpose, have the primary effect of advancing and endorsing a religion and religious practices, and create excessive entanglement with religion.

73. Defendants' policies, practices, and acts, engaged in under color of state law, convey an impermissible, government-sponsored approval of, and preference for, Islam. Consequently, Defendants' actions violate the Establishment Clause because they send a clear message to the Student Plaintiffs that they are outsiders, not full members of the school community because they are not Muslim, and it sends an accompanying message that Muslim students are insiders, favored members of the

school community.

74. As a direct and proximate result of Defendants' violation of the Establishment Clause, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

**SECOND CLAIM FOR RELIEF**

**(Violation of the Free Exercise Clause of the First Amendment)**

75. Plaintiffs hereby incorporate by reference all above-stated paragraphs.

76. Because of the aforementioned policies, practices, and acts, engaged in under color of state law, Defendants have violated the Free Exercise Clause of the First Amendment to the United States Constitution as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

77. The Student Plaintiffs possess sincerely held religious beliefs, and are subject to bullying and discrimination because of those sincerely held religious beliefs. Defendants' Anti-Islamophobia Initiative substantially burdens the Student Plaintiffs' religious beliefs by denying them access to Defendants' policies, practices, and acts on an equal basis with Muslim students.

78. Defendants' Anti-Islamophobia Initiative is neither neutral nor generally applicable, and it specifically excludes non-Muslim religious students in a discriminatory manner.

79. There is no compelling interest sufficient to justify excluding non-Muslim students from Defendants' policies, practices, and acts of supporting religious students who are subject to bullying and discrimination.

80. Defendants' Anti-Islamophobia Initiative is not the least restrictive means to accomplish any purpose Defendants sought to be served.

81. Defendants' Anti-Islamophobia Initiative is not a narrowly tailored restriction on the Student Plaintiffs' free exercise of religion.

82. Because of the aforementioned policies, practices, and acts engaged in under color of state law, Defendants have violated the Free Exercise Clause of the First Amendment to the United States Constitution.

83. As a direct and proximate result of Defendants' violation of the Free Exercise Clause, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

**THIRD CLAIM FOR RELIEF**

**(Violation of the Equal Protection Clause of the Fourteenth Amendment)**

84. Plaintiffs hereby incorporate by reference all above-stated paragraphs.

85. Defendants' Anti-Islamophobia Initiative is an unconstitutional abridgment of Plaintiffs' rights to equal protection under the law; it is not facially neutral; and it specifically targets religion for discriminatory treatment.

86. Defendants' Anti-Islamophobia Initiative is unsupported by a compelling government interest sufficient to justify its enactment, implementation, and enforcement, nor is it the least restrictive means to accomplish any permissible governmental purpose sought to be served.

87. Because of the aforementioned policy, practice, custom, acts, and omissions, engaged in under color of state law, Defendants have deprived Plaintiffs of the equal protection of the law guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

88. As a direct and proximate result of Defendants' violation of the Equal Protection Clause, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

/ / /

/ / /

/ / /

## FOURTH CLAIM FOR RELIEF

## (Violation of the No Preference Clause of the California Constitution)

89. Plaintiffs hereby incorporate by reference all above-stated paragraphs.

90. Because of the aforementioned policies, practices, and acts engaged in under color of state law, Defendants have violated Article I, § 4 of the California Constitution ("No Preference Clause").

91. Defendants' Anti-Islamophobia Initiative violates the California Constitution because it lacks a valid secular purpose, has the primary effect of inhibiting religion, and creates excessive entanglement with religion.

92. Defendants' Anti-Islamophobia Initiative conveys an impermissible, government-sponsored approval of, and preference for, Islam. Consequently, Defendants' policies, practices, and acts violate the California Constitution because they send a clear message to the Student Plaintiffs that they are outsiders, not full members of the school community, and it sends an accompanying message that Muslim students are insiders, favored members of the school community.

93. As a direct and proximate result of Defendants' violation of the No Preference Clause, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

## FIFTH CLAIM FOR RELIEF

## (Violation of the Establishment Clause of the California Constitution)

94. Plaintiffs hereby incorporate by reference all above-stated paragraphs.

95. Because of the aforementioned policies, practices, and acts, engaged in under color of state law, Defendants have violated Article I, § 4 of the California Constitution ("Establishment Clause").

96. Defendants' Anti-Islamophobia Initiative violates the California Constitution because it lacks a valid secular purpose, has the primary effect of inhibiting religion in favor of another religion, and creates excessive entanglement with religion.

97. A reasonable, objective student, parent, or other observer aware of Defendants' policies, practices, and acts would conclude that Defendants have favored and continue to favor Muslim students over students of other faiths.

98. Defendants' Anti-Islamophobia Initiative in collaboration with CAIR conveys an impermissible, government-sponsored approval of, and preference for, Islam. Consequently, Defendants' policies, practices, and acts violate the California Constitution because they send a clear message to the Student Plaintiffs that they are outsiders, not full members of the school community, and it sends an accompanying message that Muslim students are insiders, favored members of the school community.

99. As a direct and proximate result of Defendants' violation of the Establishment Clause of the California Constitution, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

**SIXTH CLAIM FOR RELIEF**

**(Violation of the No Aid Clause of the California Constitution)**

100. Plaintiffs hereby incorporate by reference all above-stated paragraphs.

101. Because of the aforementioned policies, practices, and acts, engaged in under color of state law, Defendants have violated Article XVI, § 5 of the California Constitution ("No Aid Clause").

102. Defendants have violated the California Constitution's No Aid Clause because they have used School District time, funds, and resources to enact, implement, and enforce the Anti-Islamophobia Initiative and advance CAIR's stated mission and religious objectives.

103. Defendants' Anti-Islamophobia Initiative violates the California Constitution's No Aid Clause because it grants a benefit of protecting a particular religious sect, and that benefit is unavailable on an equal basis to other religious sects.

104. As a direct and proximate result of Defendants' violation of the No Aid

Clause of the California Constitution, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully ask this Court to:

1. Declare that Defendants have violated the First and Fourteenth Amendments to the United States Constitution, as set forth in this Complaint;

2. Declare that Defendants have violated the California Constitution, as set forth in this Complaint;

3. Preliminarily enjoin Defendants from enacting, implementing, and enforcing the unconstitutional policies, practices, and acts of the Anti-Islamophobia Initiative;

4. Permanently enjoin Defendants, in their official capacity, and their successors in office, and all their respective agents, employees, and others in active concert with them, from enacting, implementing, and enforcing the unconstitutional policies, practices, and acts of the Anti-Islamophobia Initiative;

5. Award Plaintiffs nominal damages against all Defendants;

6. Award Plaintiffs their reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, Cal. C.C.P. § 1021.5, and other applicable law;

7. Grant such other and further relief as this Court finds just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all triable issues.

Respectfully submitted,

FREEDOM OF CONSCIENCE DEFENSE FUND

Dated: May 22, 2017 By: /s/ Charles S. LiMandri

Charles S. LiMandri
Paul M. Jonna
Teresa L. Mendoza
Jeffrey M. Trissell
Attorneys for PLAINTIFFS