# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITIZENS FOR QUALITY EDUCATION SAN DIEGO, *et al.*, | Case No. 17-cv-1054-BAS-JMA |
| Plaintiffs, | **ORDER:** |
| v. | **(1) GRANTING *EX PARTE* MOTION FOR EXPEDITED DISCOVERY** |
| SAN DIEGO UNIFIED SCHOOL DISTRICT, *et al.*, | **AND** |
| Defendants. | **(2) GRANTING IN PART AND DENYING IN PART THE JOINT MOTION TO CONTINUE** |
| | **[ECF Nos. 25, 27]** |

Presently before the Court is an *ex parte* motion filed by Plaintiffs for "limited" expedited discovery which they assert is needed for their pending motion for a preliminary injunction. (ECF No. 25.) The parties have also filed a joint motion requesting that the Court "defer" ruling on the *ex parte* motion for expedited

discovery and continue the hearing date on the preliminary injunction hearing for a period of four weeks. (ECF No. 27.) For the reasons herein, the Court grants the *ex parte* motion for expedited discovery, as modified herein. The Court grants in part and denies in part the joint motion to continue.

I. BACKGROUND

A. Relevant Facts

This case concerns the Anti-Islamophobia Initiative (the "Initiative") of the San Diego Unified School District ("SDUSD" or the "District"), developed to address bullying of and discrimination against Muslim students. Defendants are alleged to have violated the various religion clauses of the California and Federal Constitutions as well as certain state laws because of this Initiative and its execution in the District.

Plaintiffs allege that the Defendant school board members directed the District's Superintendent, Defendant Cynthia Marten, to develop the Initiative. They contend that in April 2017, the District's board enacted the Initiative's official policies and procedures, which they refer to as the "Policy." Plaintiffs allege that the Policy is the product of "close collaboration" between District officials and the Council on American-Islamic Relations ("CAIR"). The Policy also allegedly triggered a series of Action Steps to address Islamophobia and discrimination against Muslim students and their family. Defendants allegedly publicly rescinded the Policy at a school board meeting on July 25, 2017, a month after Plaintiffs filed the First Amended Complaint. Despite this allegedly public rescission, Plaintiffs contend that the Defendants continue to execute the Initiative, including through continued interaction with CAIR. Plaintiffs contend that this continued interaction is evidenced by an "Islamophobia Toolkit" CAIR provided to District officials after July 25, 2017.

B. Relevant Procedural History

On February 20, 2018, the Plaintiffs filed a motion for a preliminary

injunction, comprised of over two hundred pages of exhibits and the supporting declarations of Plaintiffs Citizens for Quality Education San Diego, San Diego Asian Americans for Equality Foundation, Scott Hasson, Chaoyin He, Xuexun Hu, Kevin Steel, and Jose Velazquez. (ECF No. 26.) Defendants have not yet filed an opposition to the motion for a preliminary injunction.

In their motion for a preliminary injunction, Plaintiffs seek an order enjoining the Defendants from:

1. Implementing and executing the Initiative as detailed in the Policy's "Action Steps" or any similar policy;

2. Permitting CAIR, its employees, agents, and representatives to advance their organizational objectives within the District; and

3. Adopting and implementing the CAIR Committee's "Islamophobia Toolkit" and all related online resources, recommended books, and instructional materials, together with all such materials currently in use in the District. (*Id.* at 21–22.)

Plaintiffs also filed an *ex parte* motion for permission to pursue "limited expedited discovery" for their preliminary injunction motion. (ECF No. 25.) Defendants have not filed a written opposition to the *ex parte* motion. Several days after the filing of the preliminary junction and *ex parte* motions, the parties submitted the joint motion. (ECF No. 27.) The Court now rules on the *ex parte* and joint motions.

**II.  LEGAL STANDARD**

Rule 26(d) of the Federal Rules of Civil Procedure generally provides that formal discovery will not commence until after the parties have conferred as required by Rule 26(f). FED. R. CIV. P. 26(d)(1). Courts may permit expedited discovery before the Rule 26(f) conference upon a showing of good cause. *See Apple Inc. v. Samsung Elecs. Co.*, 768 F. Supp. 2d 1040, 1044 (N.D. Cal. 2011); *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1170 (C.D. Cal.

2008). "Expedited discovery is not the norm" and, therefore, the moving party "must make some *prima facie* showing of the *need* for the expedited discovery." *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000) (emphasis in original) [hereinafter "*Merrill Lynch*"]. Good cause exists when the need for expedited discovery, in consideration with the administration of justice, outweighs the prejudice to the responding party. *See Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009) (internal quotations and citations omitted).

The good cause standard may be satisfied when a party seeks a preliminary injunction. *Id.*; *see also Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). In the context of a pending preliminary injunction motion, expedited discovery may be ordered if "it would better enable the court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing." *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613 (D. Ariz. 2001) (internal quotations and citations omitted). But the mere fact that party has moved for a preliminary injunction does not thereby entitle the party to receive expedited discovery. *Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1066. Any discovery sought for a preliminary injunction must be evaluated against the purpose of a preliminary injunction, *i.e.*, to preserve the status quo. *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 7 (D.D.C. 2006). A court should examine the requested discovery based on the entirety of the record to date and the reasonableness of the request in light of all surrounding circumstances. *Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1067, *Merrill Lynch*, 194 F.R.D. at 624. Courts examine the reasonableness of the request by considering a *non-exhaustive* set of factors: (1) whether a preliminary injunction is pending, (2) the breadth of the discovery requests, (3) the purpose for requesting the expedited discovery, (4) the burden on the defendant of compliance with the requested discovery, and (5) how far in advance of the typical discovery process the

request was made. *Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1067 (quoting *Disability Rights Council of Greater Wash.*, 234 F.R.D. at 6).

A court may deny a motion for expedited discovery if a moving party seeks discovery that is not narrowly tailored to obtain information relevant to a preliminary injunction determination and instead goes to the merits of the party's claims. *Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1069; *see also Profil Institut Fur Stoffwechselforschung GbmH v. Profil Inst. for Clinical Research*, No. 16-cv-2762-LAB-BLM, 2016 WL 7325466, at *4 (S.D. Cal. Dec. 16, 2016). A court always retains discretion to prevent excessive or burdensome discovery in the interests of justice. *Qwest Commc'ns Int'l, Inc.*, 213 F.R.D. at 419. Accordingly, the court may save an otherwise impermissibly overbroad or burdensome expedited discovery request by excising the offending aspects of the discovery request. *See, e.g., Roadrunner Intermodal Servs., LLC v. T.G.S. Transportation, Inc.*, No. 17-cv-01056-DAD-BAM, 2017 WL 3783017, at *3 (E.D. Cal. Aug. 31, 2017) (limiting scope of requested discovery that was not sufficiently tailored).

### III. DISCUSSION

Plaintiffs seek permission to serve four document production requests on Defendants. (ECF No. 25-3 ("Plaintiffs' Proposed Requests for Expedited Production of Documents").) These requests seek "all documents" in Defendants' possession, custody, or control which concern (1) the development of the "Anti-Islamophobia Initiative" since July 25, 2017; (2) the development of the "Policy" since July 25, 2017; (3) the development of the "Islamophobia toolkit" since July 25, 2017; and (4) CAIR and its employees, agents, and representatives sent to or from Defendants since July 25, 2017. (*Id.* at 6–7.)

Defendants represent that they are not opposed to providing documents responsive to Plaintiffs' expedited discovery request. (ECF No. 27 ¶2.) The burden to show good cause for the expedited discovery nevertheless rests with Plaintiffs because they seek to open discovery outside of the general framework established

by the Federal Rules of Civil Procedure. While the Court views Defendants' representation as placing a thumb in favor of permitting some form of expedited discovery, it does not resolve whether Plaintiffs have shown a need for the requested discovery or whether the scope of the requested discovery is not overly broad or unduly burdensome.[1] The Court therefore proceeds to address these issues.

### A. Plaintiffs Have Established a Reasonable Need for Expedited Discovery

Plaintiffs argue their request for expedited discovery is reasonable given their intention to seek a preliminary injunction against Defendants' ongoing unconstitutional policies and practices. (ECF No. 25-1 at 5.) They claim to seek expedited discovery "to obtain additional facts directly relevant to their [preliminary injunction] motion as quickly as possible so that the Court may consider them in its decision." (*Id.*)

Plaintiffs' need for expedited discovery is a tempered one. On the one hand, "[t]o be sure, Plaintiffs already have extensive evidence in support of their claims." (ECF No. 25-1 at 5.) Indeed, Plaintiffs have submitted over two hundred pages of exhibits and declarations in support of their preliminary injunction motion. (ECF Nos. 26-2, 26-3.) These exhibits include CAIR-provided materials, email exchanges between CAIR-associated individuals and District officials, and publicly available

---

[1] As noted, the joint motion the parties filed requests that the Court "defer" ruling on Plaintiffs' *ex parte* motion. (ECF No. 27.) The Court declines to do so. For one, the Plaintiffs filed an *ex parte* motion, asking this Court to consider their request outside of regularly noticed motion practice. Such a motion presupposes that swift judicial intervention is necessary for the relief requested. Despite the parties' evident desire to cooperate on Plaintiffs' proposed discovery requests, Plaintiffs' *ex parte* motion remains pending before the Court. Second, the substance of Plaintiffs' motion asks *the Court* to determine whether they may seek discovery outside of Rule 26(d)'s general timing. This is significant because the Plaintiffs had other options available. Rule 26(d) permits the parties to stipulate to discovery outside of Rule 26(d)'s general timing. FED. R. CIV. P. 26(d). Here, no stipulation was made.

information from the District regarding the Initiative and Policy. (*Id.*) Certain information was obtained from the District through Plaintiffs' public records request. (ECF No. 25-1 at 2.) On the other hand, there is a temporal limitation to the factual information Plaintiffs have provided to support their preliminary injunction motion. Plaintiffs contend that although the District publicly rescinded its Policy on July 25, 2017, the rescission was a "sham" in light of documents showing interactions between CAIR and District officials and employees after that date. (*Id.* at 6.) In support of their motion for a preliminary injunction, Plaintiffs have provided three emails reflecting these interactions after July 25, 2017. (ECF No. 26-3, Exs. 32–34.) The last email produced by the District in response to Plaintiffs' public records requests is dated August 10, 2017. (ECF No. 25-1 at 3 n.6.)

Whether or not Defendants' rescission was a "sham," facts pertaining to the District's conduct after the public rescission of the Policy may be relevant to the question of whether Plaintiffs face ongoing irreparable harm from a policy that allegedly violates the First Amendment of the Federal Constitution. Plaintiffs' assertion of irreparable harm in their preliminary injunction motion stems from the existence and implementation of an allegedly unconstitutional policy. (ECF No. 26-1 at 20.) In the First Amendment context, irreparable harm may be demonstrated through a likelihood of success on the merits of a First Amendment claim. *See Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 976 (9th Cir. 2002). Here, Plaintiffs assert that the additional evidence will allow them to provide "further evidence of the Initiative's discriminatory purpose and effect." (ECF No. 25-1 at 5.) In light of the evidence Plaintiffs have provided, the Plaintiffs have established a reasonable need for their expedited discovery. Even with the documents submitted with their preliminary injunction motion, the Court finds that it is in the interest of the administration of justice in this case to err on the side of caution to more fully develop the factual record on Plaintiffs' preliminary injunction motion.

## B. The Requested Discovery is in Part Overly Broad for the Limited Purpose of a Preliminary Injunction

Plaintiffs' document requests appear narrowly tailored with respect to the time period they cover. All document requests only seek documents since July 25, 2017. This time frame is thus consistent with Plaintiffs' need for the expedited discovery—Plaintiffs do not seek documents prior to the public rescission of the Policy.

But the redeeming nature of the document requests' time frame is undermined by aspects of the document requests which step beyond what is necessary "to preserve the status quo." *Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1068–69 (finding discovery requests that were overbroad impermissibly sought matter "wholly irrelevant" to preliminary injunction motion). The hallmark of an impermissible merits discovery request—although framed as a limited discovery request necessary to establish a factual record for a preliminary injunction—is the request's overbreadth. *See, e.g., Profil Institut Fur Stoffwechselforschung GbmH*, 2016 WL 7325466, at *3 (finding overbroad discovery requests were "aimed at conducting substantial discovery related to the merits of this dispute prior to the Rule 26(f) conference). Plaintiffs' definitions of certain terms and the scope of one document request are overly broad and, absent this Court's intervention, would lead down the road to premature merits discovery.

First, all document requests are not limited to documents of the named Defendants, or even to a limited number of employees who Plaintiffs have identified through the documents they obtained through public records requests submitted in support of the preliminary injunction motion. Rather, the requests define the term "Defendant" to include any of Defendants' "representatives, employees, agents, attorneys, accountants, insurers and any person acting on behalf of any of them within the San Diego Unified School District." (ECF No. 25-3, Definitions ¶1.) Plaintiffs cannot show good cause for such sweeping expedited discovery in view of the preliminary injunction motion. *See Qwest Commc'ns Int'l, Inc.*, 213 F.R.D. at

419 ("In applying the 'good cause' standard under Rule 26(d), the court should consider the scope of the requested discovery.") Plaintiffs' own public records requests to the District only named sixteen specific individuals, including the named Defendants and a limited number of other District officials and employees. (ECF No. 26-3 Ex. 40.) Plaintiffs later reduced this number to thirteen individuals. (*Id.* Ex. 41.) Plaintiffs' own preliminary injunction motion is premised on the actions of the named Defendants and a limited number of District officials. (*See generally* ECF No. 26-1.) Although Plaintiffs' sweeping definition of the term "Defendant" may be proper for merits discovery, it is not narrowly tailored to what is essential to resolve their preliminary injunction motion. *See Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1100 (N.D. Cal. 2012) (finding that plaintiff had failed to show requested discovery was necessary to obtain injunctive relief). Rather than preclude any expedited discovery on this ground, the Court will limit Plaintiffs' definition of the term, solely for the purposes of their expedited discovery request, to the named Defendants and any District officials or employees identified in Plaintiffs' pending preliminary injunction motion and supporting exhibits.

Second, at least two of Plaintiffs' production requests are facially overbroad when compared to the preliminary injunction motion. For example, Document Request Number 3 seeks all documents concerning the "Islamophobia Toolkit." (ECF No. 25-3 at 6.) Plaintiffs define the term "Islamophobia Toolkit" as "all memoranda, reports, summaries, manuals, brochures, books, pamphlets, periodicals, instructional materials, educational resources, training materials, and statements provided to Defendants by CAIR, its employees, agents, or representatives, and anyone working in concert with them, on or after July 25, 2017. (*Id.* Definitions ¶8.) Under Plaintiffs' definition, *anything* that CAIR provided Defendants after July 25, 2017 is effectively part of the "toolkit." This definition stands in stark contrast to Plaintiffs' preliminary injunction motion, which expressly identifies the District's "new 'Islamophobia Toolkit,'" as an example of the District's continued

implementation of the action steps. (ECF No. 26-1 at 8–10.) That toolkit, provided as an exhibit to the motion, is a one-page document listing electronic links to the resources that comprise that kit. (*Id*. Ex. 35.) Plaintiffs' definition so overwhelms the significantly circumscribed meaning of the toolkit in Plaintiffs' preliminary injunction motion and related exhibit that Document Request Number 3 clearly seeks discovery that is not narrowly tailored. The Court accordingly will limit the scope of this request to any subsequent or related versions of the "toolkit" identified in Plaintiffs' preliminary injunction and the corresponding exhibit of the toolkit, which Defendants have developed, are developing or intend to develop. The Court cautions Plaintiffs that the Court's use of the word "related" should *not* be construed by the parties to effectively reinstate the document request as proposed.

Document Request Number 4 is also overly broad. The document request seeks all documents in Defendants' possession, custody or control concerning CAIR and its employees, agents, and representatives sent to or from Defendants since July 25, 2017. (ECF No. 25-3 at 6.) The scope of this request is sweeping and seeks matter "wholly irrelevant" to their preliminary injunction motion. *See Am. LegalNet, Inc*., 673 F. Supp. 2d at 1068–69 (finding discovery requests that were overbroad impermissibly sought matter "wholly irrelevant" to preliminary injunction motion). Plaintiffs effectively seek any documents between Defendants and CAIR *irrespective of whether those documents actually concern the allegedly unlawful Initiative or the Policy*. The request thus extends beyond what is necessary to maintain the status quo, in view of the preliminary injunction motion. The Court will not countenance a general fishing expedition into Defendants' documents in the guise of discovery necessary for a preliminary injunction. The Court will thus limit this document request to only those documents between Defendants and CAIR which concern the Policy or the Initiative.

Lastly, the Plaintiffs' document requests purport to impose on Defendants a "continuing" obligation to produce "additional responsive documents." (ECF No.

25-3, Instructions ¶4.) Plaintiffs would require Defendants to provide supplemental documents even when those documents could not be entertained by the Court to resolve their preliminary injunction motion. The requested discovery thus impermissibly extends beyond a need to more fully develop the factual record for Plaintiffs' preliminary injunction motion. By doing so, the continuing obligation opens the door to merits discovery. The Court will thus limit Defendants' production obligations under the expedited discovery requests. Although Defendants should endeavor to produce all responsive, non-privileged documents to Plaintiffs in a reasonably prompt fashion, Defendants need not continue to produce documents responsive to the expedited discovery requests after the date on which their opposition to Plaintiffs' preliminary injunction motion is due.

### C. The Burden on Defendants

Plaintiffs contend that any burden on Defendants from complying with their document requests would be minimal and assert that their requests are no different from a public records request. (ECF No. 25-1 at 5.) Defendants have not expressly identified any burden on them if they are required to comply with Plaintiffs' discovery requests. In the parties' joint motion, Defendants claim that they need to identify the responsive hits to Plaintiffs' production requests to determine whether Plaintiffs' document requests are overbroad or unduly burdensome. (ECF No. 27 ¶3.) This assertion places the question of whether they should have to produce any documents before the threshold question of whether the requests are overly broad and unduly burdensome. The latter inquiry can be assessed by looking at the face of the requests. *See, e.g., AmLegalNet, Inc.*, 673 F. Supp. 2d at 1067–68 (examining the requests for facial overbreadth); *see also Satmodo, LLC v. Whenever Communs., LLC*, No. 17-cv-192-AJB-NLS, 2017 WL 4557214, at *5 (S.D. Cal. Oct. 12, 2017) (same). The joint motion is also illuminative because it shows the Court that any burden Defendants would face arises from the breadth of the discovery requests' definition of the term "Defendant" and the requirement that Defendants produce

responsive documents within seven days of receiving the requests. The Court addresses each potential burden.

Defendants indicate that, to comply with Plaintiffs' discovery requests, they would need to search the District's email server "which includes thousands of employees," which would prevent them producing the discovery on an expedited basis. (ECF No. 27 ¶3.) Here, the Court has already determined that the document requests are overly broad and unduly burdensome in certain aspects. Most relevant to the burden Defendants intimate, Plaintiffs' requests seek documents beyond the named Defendants, or individuals expressly identified in documents that Plaintiffs have provided in support of their preliminary injunction motion. (ECF No. 25-3, Definitions ¶1.) The Court's modification of the term "Defendant" for the purposes of the expedited discovery, however, substantially reduces the burden resulting from the proposed term's overbreadth relative to the needs of the preliminary injunction.

With respect to the timing of production, Defendants indicate that they will not be able to produce the requested documents within seven days, or even "sufficiently in advance of the March 26, 2018 hearing on Plaintiffs' motion." (ECF No. 27 ¶2.) While this concern stems from the original sweep of Plaintiffs' requests, it also appears to be based on a belief that Defendants must produce any and all responsive documents within seven days. This is clearly not contemplated by Plaintiffs' production requests, which state that the parties can make other arrangements for review or production. (ECF No. 25-3 at 1.) Moreover, Plaintiffs indicate that they are amenable to Defendants receiving more time to locate and produce responsive documents. (ECF No. 27 ¶4.) Under these circumstances, the Court finds that the seven-day time period for production is not unduly burdensome to Defendants and defers to the parties to make production arrangements they deem necessary, subject to the production cutoff identified in this Order.

IV. **CONCLUSION & ORDER**

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Court **GRANTS** Plaintiffs' *ex parte* request for expedited discovery, as modified herein. (ECF No. 25.)
2. For the purposes of the expedited discovery requests (ECF No. 25-3):
   (a) The term "Defendant" means any named Defendant and any District officials or employees expressly identified in Plaintiffs' pending preliminary injunction motion and supporting exhibits.
   (b) The term "Islamophobia Toolkit" means the Islamophobia Toolkit as identified in Exhibit 35 to Plaintiffs' preliminary injunction motion, and any subsequent or related versions, which Defendants have developed, are developing, or intend to develop.
   (c) Consistent with the modified definition of the term "Defendant", Document Request No. 4 is limited (in italics) as follows: ALL DOCUMENTS in the POSSESSION, CUSTODY OR CONTROL OF DEFENDANTS CONCERNING CAIR and its employees, agents, and representatives sent or from Defendants since July 25, 2017, *which concern the "ANTI-ISLAMOPHOBIA INITIATIVE" and/or the "POLICY"*.
3. The parties' joint request to defer ruling on the *ex parte* motion is **DENIED**. (ECF No. 27.)
4. The Court **GRANTS** the parties' joint request to continue the hearing date on the pending preliminary injunction motion **from March 26, 2018 to April 23, 2018**. The Court advises the parties that the hearing date on the motion is for briefing purposes only, not oral argument. The Court will advise the parties by further order if it finds that oral argument is necessary.
5. Defendants are ordered to file an opposition to Plaintiffs' motion for a preliminary injunction **no later than April 9, 2018**. Plaintiffs may file

a reply in support of their motion for a preliminary injunction **no later than April 16, 2018**. Plaintiffs may file an enlarged reply, not to exceed twenty pages, to account for additional factual information obtained through the expedited discovery permitted under this Order.

**IT IS SO ORDERED.**

DATED: March 5, 2018

Hon. Cynthia Bashant
United States District Judge